on the briefs. The first case on calendar for argument is Fahr v. Johnson. Counsel for appellants, please approach. Good morning, counsel. Good morning, Your Honors, and may it please the Court. My name is Maggie Amon on behalf of the plaintiff appellant, Ms. Robin Fahr. Today we ask that this Court reverse the District Court's grant of summary judgment and find that it erred when it granted Johnson's motion despite genuine issues of material fact. My client, Ms. Robin Fahr, is an elderly, wheelchair-bound woman who suffers from Crohn's disease as well as other chronic illnesses. She is currently in the custody of the Arizona State Department of Corrections. In August of 2021, physician assistant Timothy Johnson overrode her prior treatment plan and changed the administration of her necessary Crohn's medication from KOP, or keep-on-person, to DOT, or direct-observed therapy, to be taken at set times at pill call. Ms. Fahr appealed this decision internally, and when administrative remedies proved unsuccessful, she turned to the federal judiciary for recourse. The District Court, however, granted physician assistant Johnson's motion for summary judgment. But this was error because there are at least two genuine issues of material fact. First, regarding why Johnson made the medication administration change, and second, regarding his knowledge about the harm that the change caused. Counsel, why is the reason for making the change a material issue of fact? Your Honor, the reason behind a provider's choice to engage in a course of treatment, or in this case, to change the medication, is a material issue of fact because this Court's precedent has underscored the why or the impetus behind the change is central to evaluating the responsiveness of the provider to the serious medical needs, getting to the objective, subjective prong. So what's your best case from the Ninth Circuit that says the why of the action is a material issue? What case says that? The best case to illustrate that is Colwell v. Bannister, where this Court held that the blanket administration of a prison policy, using strong language, is the paradigm of deliberate indifference, underscoring that when a provider takes a medical action not pursuant to a medical judgment, but rather pursuant to an administrative policy, that amounts to deliberate indifference. Counsel, I was struck by the fact that Mr. Johnson, a physician's assistant, was overriding a doctor's prescription. Is that common within the prison system, or is that something that we should take note of? I'm unable to speak to how common it is. However, physician assistant Johnson did have authority to override it. But to get to the factual premise of Your Honor's question, Ms. Farr had been prescribed her medication as KOP by medical doctors and DOs for at least seven years prior to August of 2021. So I think Mr. Johnson's premise for changing it was because there was a centurion policy to that, that you could not have these types of medicines be keep-on-person. Is there, in fact, any record evidence of such a policy? The district court, Your Honor, found a disputed issue of fact on this point and stroked the affidavit of James Flanau that had been offered in support of this policy. However, it's clear that this was the assertion that Johnson put forward. He said this in his motion for summary judgment, in his declaration of facts, as well as his affidavit attached to the motion. And in Colwell, it was, in fact, an informal policy. And we see that in acting pursuant to this alleged policy, that's where the deliberate indifference came in. Counsel, so can you explain to me why it matters, why the change was made, if the change was still medically acceptable? Your Honor, in part, it's because it removes the obligation of the providers to have these individualized medical judgments and to be responsive, to echo the language of Jett v. Penner, to the objectively serious medical need. But, I mean, if he's treated, if the treatment is still medically acceptable, why does it matter if it was for a policy or because, you know, for any other reason? How does that violate the Eighth Amendment? I would push back on the premise that this was a medically acceptable course of treatment. Okay, so where's the medical, what's the objective evidence to show that this was a medically unacceptable treatment? We can look first to the grievances submitted by Ms. Farr, which provide a chronological outline of her situation. So her subjective ailments. But where's the objective medical evidence showing that this was unacceptable treatment? While there wasn't any sort of expert testimony for Ms. Farr in this case, there is disagreement where other providers did not feel as though this was the acceptable course of treatment. And we see that this happened— But didn't Dr. Ibrahim, an actual doctor, prescribe it keep-on-person even after the change had happened with Johnson? That's right, Your Honor, in spring of 2022. And wasn't there another doctor, I forgot his name, also, who prescribed—  Stabinsky. Didn't he prescribe it as keep-on-person? He did. And the medical records are not entirely complete, but some medical provider had prescribed this medication as KOP for seven years prior. So did any doctor opine that not keeping it on person would be medically unacceptable? Not using those terms. However, the physicians did change it back to KOP, including, as Your Honor mentioned, Dr. Ibrahim in spring of 2020. One of the effects, at least with the dicyclamine, of moving it to DOT is that it reduced the dosage over the course of the day. And Ms. Farr presented evidence that she suffered symptoms, flare-ups and other things. So at least it would seem to me to be a tribal question whether it was a medically appropriate thing to do. I would agree, Your Honor. And just to clarify, the dosage issue is not at issue here on appeal. But what you're getting at is that she was deprived of the most—of the effective use of these medications. Why is it not at issue in this appeal? I believe that the district court did not address that Ms. Farr was bringing it up below. And so what we're discussing is the administration. But doesn't it affect our evaluation of deliberate indifference, whether Mr. Johnson might have been aware of a significant risk of harm if the effect of his action is to reduce the dosage from what a doctor had prescribed? Certainly it could weigh into that, Your Honor. However, what we're emphasizing here is that in denying her the effective ability to treat her symptoms as they arose is what contributed to the harm that she suffered in this case. In several of her grievances— Is there a case that says that we can look to the patient's subjective, you know, description of her ailments to determine whether what's an objectively medically acceptable course of treatment? None that has a rule statement to that effect. However, as occurred in Jett, the court was able to make determinations on the subjective prong based on medical records as well as testimony. There's not a need for the physician. Counsel, in Hunt, we did look to the complaints of the inmate regarding the pain that was caused by the lack of treatment. So we do have some precedent that allows us to look to the complaints of the inmate to determine whether or not the treatment is effective. That's right, Your Honor. I mean, I think one of Mr. Johnson's record notes noted the actual symptoms that she was experiencing from them. So I don't think it was just her saying that this was happening. There was some record evidence that the flare-ups were happening, correct? That's right, Your Honor. And I see I'm nearing the end of my time. But could you just, for the record, talk briefly about your second? We delayed you on the first material issue of fact. So could you just briefly talk about the second issue of fact? Yes, Your Honor. There's also a material issue of fact as to Johnson's knowledge about the harm that the change caused. This is referring to the period between August 2021 and December 2021, where Ms. Farr's symptoms increased both in frequency and severity. The best piece of evidence that Your Honors can review are the December 2, 2021 patient notes, where P.A. Johnson notes that she has a lot of Crohn's symptoms, including nausea and diarrhea, but he does not change her medication back, and he also does not prescribe her Imodium, which also treats these symptoms as well. There were many grievances that she filed after the change in the prescription. Is there anything in the record to suggest that Johnson was made aware of these grievances, or is that a reasonable inference that we could draw from all the grievances that something like this might come to his attention? Your Honor, Johnson asserts in his response brief that he did not have knowledge of these grievances. However, as Ms. Farr states throughout these grievances, she had spoken to Johnson. She even saw him for, I believe, an evaluation of cancer lesions in October. And so I believe that it is a reasonable inference to be drawn that he was spoken to by Ms. Farr about this. And even if that isn't the case, his own notes indicate that he spoke to her about this issue on December 2, 2021. All right. Thank you, counsel. Thank you. For these reasons, we respectfully request that you reverse with instructions for the appointment of pro bono counsel. Thank you. Thank you. We'll hear from Ms. Dave. Good morning. May it please the Court. Sarah Barnes, and I am here on behalf of P.A. Johnson. We obviously would like this Court to affirm the district court's grant of summary judgment below for P.A. Johnson. And I want to start first with two main points to address, which is there is a loan claim for deliberate indifference against P.A. Johnson only. There's no negligence claim. There's no Monell claim here, and he's not subject to a policy claim. There's no dispute that P.A. Johnson did not enact the policy to which he refers, nor is there any dispute in the record that that is so. In fact. Is there any, as Judge Sanchez inquired, is there anything in the record that establishes the existence of a policy? Other than the affidavit of P.A. Johnson, is there any record of this policy? The policy is established by not only P.A. Johnson's declaration, which is not that the keep-on-person changes were made. And a side note, keep-on-person and as-needed are not the same thing. And I think that there is some confusion about the fact that where there's references to as-needed, that automatically means KOP, and it does not. As-needed means Well, but it can't be as-needed has to be keep-on-person because there are scheduled times for the observed therapy. So how can that be anything other than keep-on-person? Because there's multiple references in the drug prescription orders that talk about as-needed. And what happens is, and even in Dr. Ibrahim's own note on 822 of 2021 regarding the promethazine, it says AM pill call, PM pill call as-needed. Well, but that specifies to the pill call, so that's direct observation therapy. But as-needed without that reference would not be consistent with direct observation therapy, would it? There's no prescription for her that's at issue that says that it can't be as-needed under the direct observation therapy. In other words, she comes at the AM. If she wants that medication, she can take it. If she's feeling like she needs it at that time, along with the multiple other medications that she was prescribed to have at the AM pill call. And then again, same thing at PM pill call. And both these medications So what if she has symptoms in the interim? There is no medical evidence in this case whatsoever that she needed to take one of those two medications, the cyclamine or the promethazine, at the time that she's all of a sudden having a symptom. Sure there is. There's plenty of indications of different flare-ups from her Crohn's disease, different things that she was experiencing after the 2021 prescription change. And what's unclear, and I think what the district court picked up on was, what was the basis for this change and could the symptoms be related to the different dosage or the fact that she could not take it at the time that the symptoms were arising? Your Honor, what I would say to that is two things. One, the dosage, again, is not an issue on appeal. So there is no See, I guess I have a different point of view about that. Because in my view, if the deliberate indifference standard is determining whether Johnson had knowledge of a significant risk of harm, and one of the consequences of his changing the prescription was necessarily changing the dosage for one of the drugs, then it seems to me that that is a relevant consideration as to his knowledge. Knowledge of the risk. And there is no medical evidence that suggests that the changing of the dosage to comply with it being within the DOT policy would create a significant risk of harm to her for what has already been determined to be, and it's undisputed, a disease where there are naturally flare-ups, even upon or even having these medications, whether they be keep-on-person or DOT. I mean, I guess that's for trial, right? Can I circle back? I'm sorry. Did you want to ask a question? Just a simple question. Is there any medical evidence showing that the change from KOP to DOT caused the flare-ups? There is not, Your Honor. There is no medical evidence whatsoever. And in fact, Ms. Farr did not communicate that to you. We've got to remember, PA Johnson only had a few encounters with her that are at issue with respect to this particular disease and this change in medication. She did not even communicate that clearly, that that was something that she thought. But again, even if she thought it, she's a layperson who is not credible to make that kind of determination. But she knows her symptoms. But she knows her symptoms. In Hunt, we've given credence to the symptomology that's articulated by the inmate. So the fact that she is articulating these symptoms raises a material issue of fact. And respectfully, Your Honor, I disagree, because first, Hunt is very different than this case here. In Hunt, he is presenting with bleeding, gums, weight loss, objective, observable things that could be attributed to the fact that he's saying he can't eat this particular food. That is a stark contrast from what we have here, which is her presenting on December 1st to PA Johnson and saying that, as sometimes she did, I'm having some, I'm having diarrhea and nausea. While she has multiple other symptoms, she just started, she's been on this medication for a long time. She did just start a few months prior the DOT method of administering it. But she still has that medication. And she, he then responds to that. It's not as if, it's not like these other cases where he's denying something, ignoring, wait and see what happens. He admits that he... Well, but his response was, because what struck me was, even after he changed it initially, Dr. Ibrahim prescribed again, keep on person, and then he changed it back. And my understanding is those changes never occurred with a conversation with the prescribing doctor. It was, or with her. It was just automatic. Based on this supposed policy, there's no written documentation of. And I believe that it's in SCR 2, Volume 3, 258. And if I could double check that, I will in a second. The, Dr. Ibrahim did not prescribe it as keep on person. That's not what the record shows. The record shows that on 8-22, Dr. Ibrahim put in the promethazine only, which by the way, he didn't even do the, the, the cyclamine. He put in the promethazine as pill call, AM, PM, as needed. And down below on that very first page, it says, may not be KOP. So, I think there's been a, some confusion about what Dr. Ibrahim put in. On 8-22, he put that one prescription in, and it says, may not be KOP. May I grab my, I'm just going to grab this. I'm going to grab my prescription. So, can I refer you to, let me see. SCR 257, where there's handwritten notes that says KOP for dicyclamine and promethazine. And I understood that to be from Dr. Ibrahim. SCR 257, Your Honor. Actually, no. 330, I apologize. Okay. On SCR 330, which honestly appears to be the same document as SCR 257, it's just an administration record. It says, comments, may not have KOP. But do you see the handwriting, KOP, keep on person as, where did that come from? Is that not from the doctor? I don't have that on my SCR 330 in Volume 3. Okay. I apologize, but it's not here on mine. Okay. And so it's highlighted on mine that it says may not have KOP, which is the same on SCR 257. And when P.A. Johnson says he looked at it and believed it had been put in DOT, I'm sorry, KOP, and it needed to be DOT on 8-23-2021, that was for dicyclamine. I'm sorry, I always trip over that word. Dicyclamine. And so there is no Dr. Ibrahim ever in the record anywhere saying it had to be this or that it needed to be that, nor is the record from anyone else previous to this change, which P.A. Johnson says was policy and he actually wasn't even able to enter it a different way. There is nothing disputing that. But more importantly, there is no medical evidence that making that change, consistent with the policy that he's not liable for, was medically unacceptable. Having one reference to P.A. Johnson in December of 2021 that says he was, that she was having some nausea and diarrhea for a condition that comes with nausea and diarrhea on occasion, does not then equate to this harm is caused by DOT versus KOP. Sotomayor, go ahead, Judge.  Counsel, that takes me back to Hunt. Do you have Hunt before you? I have the notes from Hunt, Your Honor. I don't have the entire. Well, I'm looking at the facts of Hunt. Okay. At 865 F. 2nd 199. And the first paragraph of the facts is talking entirely about Hunt's complaint. In fact, there was no documentation, medical documentation, until after the court ordered the grievance be responded to. And even then, there was a repetition of his complaint. So we considered his complaints to be an indication of what was medically necessary. Yes, Your Honor. But there also, my recollection of the facts of the case, which I did look at, I don't have it in front of me, is that regardless of how it came to be, the examination was made and there was objective observation of those issues for him. But again, more importantly, he's being denied something here that would be a reasonable Counsel, that's not the facts of Hunt. I'm sorry. That's not the facts because the prison maintained that he had sufficient teeth to eat foods as long as he was given soft foods. There was no medical documentation to support his complaints. It was his complaints that formed the basis of this Section 1983 complaint. I understand. But there was physical evidence of what his condition was. They simply determined that despite that, he has enough teeth to eat this food without having to eat soft foods. There is physical evidence that she expressed to this lone defendant in the case that she was having nausea and some vomiting.  Diarrhea. Uncontrollable. Correct. On one occasion. And there is no evidence to tie that in any way, shape, or form to the change in the manner in which those medications were delivered to her. And every single case on which Ms. Farr relies are cases that talk about denial of treatment, refusing surgery, refusing recommendations from other physicians, specialists saying this needs to happen or there's going to be harm. There is no such medical evidence here. And I do see that I'm out of time, so unless there's some other questions. I did. So she has several grievances that talk about how her chronic symptoms are flaring up and she needs to keep on person. That was on 9-9. On 9-19, that Johnson changed her prescription and since that change, she's in constant pain, nausea, and discomfort. On 10-13, sick all the time without my medication, keep on person. Why isn't it a reasonable inference that these grievances, I mean, I would somehow get to Johnson, to his attention, if she's filing multiple grievances during the course of August and September and thereafter. Why shouldn't it be a reasonable inference for purposes of us determining if there's a genuine dispute, his knowledge of what was going on with her? So it's not a reasonable inference in this situation because there is direct controverting evidence to that fact that is undisputed. There is evidence from the country that he did not see those grievances. His declaration that that's not a part of how the system within the prison works. But just because a declaration says something doesn't make it not a tribal issue, though. It makes it not a tribal issue when there's no evidence that's credible to the contrary to refute it. The fact that she wrote a grievance that is then responded to and signed by somebody completely different, which is the case with every one of her grievances, there's no reasonable inference to then draw when it doesn't say on the face of those documents that he got them. He says the grievance. How could the grievance be resolved without consulting with P.A. Johnson? If the grievance was against him, how could the administration resolve that grievance without consulting with him? Well, first, I'd like to point out that whether or not the administration resolved the grievance in a manner in which it is acceptable or not acceptable, again, it's not at issue because there is no claim against Centurion in this case. But that's not the issue, whether or not they're as a practical matter. As a practical matter. As an administrative matter. How could a grievance be resolved that's made against an individual if that individual is never interviewed or consulted? You have to go by what the record shows. There is no record, evidence or testimony that he was consulted by these people responding, whose job it is to respond to the grievances, that they consulted with P.A. Johnson in particular. There is evidence that they reviewed and responded to it based on what they looked at. But there's no direct evidence that he was consulted. But in any event, even if he had been consulted on one occasion that she's claiming that her symptoms are being caused by this KOP or DOT administration, again, there's no medical evidence to support that. That is her belief. That is solely her disagreement with a policy, again, that P.A. Johnson did not implement.  But are you saying it's undisputed that she never apprised P.A. Johnson directly of her issues? No. What I'm saying is the fact that she apprised him in December 1 that she's having some symptoms of Crohn's. She asked for Imodium. Imodium is an over-the-counter which she can get. He does respond and also provide her another MedDRAW pack, which that particular one was allowed to keep on person. It's a pack and it's given to her. He responded to that. He didn't ignore it. This is simply not a case like many of the other cases that are relied on here by Ms. Farr where he's not responding, wait and see, not treating, denying. It is simply him following a policy he believed he had to follow, not be and in his declaration, which was given in response to the in conjunction with the motion for He agreed that having it administered at the beginning of the day and the end of the day versus giving her the dosage to have in her hand, which, by the way, the dosage is still limited. She's not given an inordinate amount to just hold in her cell and take whenever she wants. She's still only given a small amount. So I hope that answers the question about that. She did communicate this symptom to her and he did not ignore it. He responded appropriately for these reasons that we asked. Are there any other questions? Sorry. All right. Thank you, counsel. Thank you. Great bottle. Sorry. Good morning, Your Honors. May it please the Court. My name is Aaron Pinkett and I'm here on behalf of the plaintiff appellant, Ms. Robin Farr. I'd like to quickly address something that was brought up by opposing counsel and that was questioned by Your Honors. In terms of whether or not Ms. Farr directly communicated this issue to P.A. Johnson, there is direct evidence in the record that does support that. I would point you to the September 19th grievance at 2 S.E.R. 69. It specifically says, it is apparent that P.A. Johnson not only changed my prescription and removed KOP status, but it's clear he did it for mere convenience rather than to take into consideration my physical well-being. But that doesn't say that she communicated that to P.A. Johnson. That just says she blames him for it. Yes, Your Honor. But lower down on it, it says, if yes, give staff members. It says P.A. Johns, even though it clearly says P.A. Johnson up top, which a reasonable jury could conclude that she is apprising P.A. Johnson of this change during this encounter. But there is another P.A. Johns, correct? There is not another P.A. Johns. There is a Gemini Johns who is a nurse practitioner. However, Ms. Farr is entitled to all reasonable inferences. And the fact that she says P.A. Johnson up at top and then later says P.A. Johns, a reasonable inference would be that she is talking about the same person in both sentences. And when it comes to causation, first off, that is a jury question. But also, in addition, it says since this change But it is a jury question, but what's the evidence to show the causation? So specifically, we can refer to Ms. Farr's notes. Just Ms. Farr's testimony. Yes. She says, since this change, I am in constant pain, nausea and discomfort due to not having my medication on hand and as needed for these symptoms. So there is direct evidence that she is directly attributing this to P.A. Johnson's change in the administration. I see that I am at time for those reasons. Are there further questions?  Mr. Pinker, let me ask you this. The Farmer v. Brennan Deliberative Indifference Standard talks about knowledge of a substantial risk of harm. And so here's my question. Is it actually the case that plaintiff had to come up with knowledge that Johnson knew that the symptoms were happening or that he was harming her? Or is it enough to have knowledge that changing the dosage, changing the prescription could cause a substantial risk of harm to a person enough to get it to trial? So it would be the latter. And specifically in Farmer v. Brennan, the language is a provider is deliberately indifferent where they know of and disregard an excessive risk to inmate health and safety. So the fact that she is communicating that there is this harm that is happening to her with her worsening condition would be enough to meet the standard that was illustrated in Farmer v. Brennan. Any questions? No. All right. It appears there are no further questions. We thank all counsel for your helpful arguments. And on behalf of the circuit, we thank the Northwestern University School of Law Federal Appellate Practice Clinic for your able representation. The case just argued is submitted for decision by the court.
judges: RAWLINSON, BUMATAY, SANCHEZ